UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | No. 02-CV-2899 (BWK) |
| : | |
| DEMATOS ENTERPRISES, INC., JOACQUIM : | |
| DEMATOS, DONNA DEMATOS, MARIA : | |
| DEMATOS, ELIZABETH DEMATOS GRYS, and : | |
| CHRISTOPHER PAUL GRYS : | |
| : | |
| **Defendants.** : | |

**MEMORANDUM OF LAW FILED IN SUPPORT OF
PLAINTIFF SAFECO INSURANCE COMPANY OF AMERICA'S
MOTION FOR ISSUANCE OF A PRELIMINARY INJUNCTION**

**I. HISTORY OF THE CASE**

Plaintiff, Safeco Insurance Company of America (hereafter "Plaintiff" or "Safeco"), instituted this civil action by Complaint filed on May 14, 2002.

After filing its original Complaint, Safeco learned of additional claims against one of the original Defendants (Maria DeMatos), and her daughter and son-in-law, Elizabeth DeMatos Grys and Christopher Paul Grys (who were not originally named as Defendants). Based on that new information, Safeco filed its First Amended Complaint on July 8, 2002; that filing was permissible under Fed.R.Civ. P. 15(a), because by that point Defendants had not yet filed a responsive pleading to the original Complaint.

On or about July 30, 2002, the five Defendants, through their counsel, Fitzpatrick Lentz and Bubba, filed an Answer to Safeco's First Amended Complaint.

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

On August 14, 2002, Safeco filed a Motion for Issuance of a Preliminary Injunction, in connection with which Safeco is filing this supporting Memorandum of Law.

## II. STATEMENT OF FACTS

The majority of the relevant facts are not in material dispute.

The Plaintiff, Safeco, is in the business of, among other things, issuing surety bonds (performance bonds and payment bonds) for construction projects. (First Amended Complaint, Paragraphs 1 and 9). Defendant DeMatos Enterprises, Inc. is a Pennsylvania corporation engaged in the construction business, whose principal was Joacquim DeMatos. (Id., Paragraphs 2 and 6).

On December 9, 1998, DeMatos Enterprises, Inc., Joacquim DeMatos, Donna DeMatos and Maria DeMatos (Joacquim DeMatos' mother) signed a General Agreement of Indemnity (hereafter "the Indemnity Agreement") in which they agreed to reimburse Safeco, on Safeco's demand, for all losses, costs, expenses, fees, etc. incurred by Safeco, arising out of or resulting from Safeco's issuance of Bonds securing the performance of DeMatos Enterprises, Inc. under construction contracts entered into by DeMatos Enterprises. (Id., Paragraph 12; Exhibit "A").

Subsequent to Safeco's issuance of the aforesaid Bonds, DeMatos Enterprises defaulted on a number of construction projects, as a result of which Safeco has (a) been forced to honor its obligations under payment and performance bonds issued on those projects, and (b) incurred and sustained additional damages, losses and costs including attorney's fees. (Id., Paragraphs 15 and 16). At present, Safeco has established a $650,000.00 loss reserve for claims on Bonds it issued at the request of DeMatos Enterprises, Inc.

After filing its original Complaint in this case, Safeco learned that Defendant Maria DeMatos had, since October, 2001, sold two pieces of real estate owned by her. One was a

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

single family home located at 2291 Black River Road, Bethlehem, PA, which had a fair market value believed to be in excess of $350,000.00, but which she conveyed on October 9, 2001, to her daughter and son-in-law (Defendants, Elizabeth DeMatos Grys and Christopher Paul Grys) for $130,000.00.  (Id. Paragraphs 24 and 25).  The other transaction involved the sale of a 23.8258-acre tract of land believed to be unimproved, but having considerable value, which was sold to a woman named Tetiana Lohyn, for a stated consideration of $430,000.00.  (Id., Paragraph 21)

Based on these transactions and occurrences, Safeco's First Amended Complaint contains three causes of action, which are described in Paragraph 3 of Safeco's Motion for Issuance of a Preliminary Injunction.  By way of summary they are: (a) Count I, for breach of contract, against DeMatos Enterprises, Inc., Joacquim DeMatos, Donna DeMatos and Maria DeMatos for their liability under the Indemnity Agreement, for all of Safeco's damages and losses arising out of or resulting from performance and payments bonds Safeco issued at the request of DeMatos Enterprises and its principals; (b) Count II, being a fraudulent conveyance claim under Section 5104(a)(1) (actual intent to defraud) of the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C. S. A. Section 5101 et seq. ("UFTA"), in connection with Maria DeMatos' sale of the 2291 Black River Road property to her daughter and son-in-law for approximately $200,000.00 less than its fair market value; and (c) Count III, being a claim under Section 5105(a) (transfer by an insolvent debtor at less than fair market value), of the UFTA, for the same fraudulent conveyance of the 2291 Black River Road property.

The Indemnity Agreement executed by Joacquim DeMatos, individually and as President of DeMatos Enterprises, Inc., Donna DeMatos, Maria DeMatos and Joacquim DeMatos, contains two clauses which are relevant to this Motion for Issuance of Preliminary Injunction.

3

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

--   Paragraph 4 under General Provisions (page 3) provides that Safeco has the right to review those Defendants' books, records and accounts, and it has the right to contact those Defendants' banks to determine the amount of funds on deposit;

--   Paragraph 2 of the "Indemnity to Surety" section on the first page of the Indemnity Agreement, requires those Defendants to pay over to Safeco, on demand from Safeco "an amount sufficient to discharge any claim made against [Safeco] on any Bond," and the amount demanded may "be held by Safeco as collateral security against loss on any Bond . . . ."

On July 8, 2002 Safeco's counsel made written demand on Defendants' counsel for Defendants to provide certain financial information from Defendants' books, records and accounts, regarding the financial condition of the Defendants who signed that Indemnity Agreement. (See July 8, 2002 letter attached as Exhibit "C" to Safeco's Motion for Preliminary Injunction). In that July 8, 2002 letter Safeco's counsel also requested that Defendants immediately provide collateral to Safeco, as support for their indemnification and hold harmless obligations, with Safeco being entitled to that collateral under Paragraph 2 of the "Indemnity Surety" portion of the Indemnity Agreement. Safeco's counsel repeated this request in a letter dated July 31, 2002 (see Exhibit "D" to Safeco's Motion for Preliminary Injunction).

When Defendants' counsel still failed and refused to respond to Safeco's requests for financial information and collateral, Safeco's New Jersey counsel communicated with Defendants' counsel by telephone on August 7, 2002, renewing the request for this information and collateral. The substance of that telephone conversation was summarized in an August 8, 2002 letter from Safeco's New Jersey counsel, Jamie P. Clare, Esquire, a copy of which is attached as Exhibit "E" to Safeco's Motion for Issuance of a Preliminary Injunction.

4

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

The crux of Safeco's present predicament is that (a) it has an undisputed significant claim against the four Defendants who/which signed the Indemnity Agreement, (b) it has serious and justified concerns over the Defendants' long-term financial capabilities to pay and satisfy a judgment entered against them (particularly given the demise of their family business DeMatos Enterprises, Inc.), and (c) at least one of those Defendants (Maria DeMatos), has (i) engaged in a fraudulent transaction, involving the transfer of her home at 2291 Black River Road, to her daughter and son-in-law and, (ii) sold in the last several months a valuable piece of real estate, for which she received literally hundreds of thousands of dollars, but for which she has refused to account and provide as collateral for her substantial liabilities to Safeco under the Indemnity Agreement.

In light of these facts, Safeco has filed a Motion for Issuance of Preliminary Injunction seeking entry of an Order of this Court (a) directing and compelling the Defendants to provide certified financial information, to which Safeco is entitled under Paragraph 4 of the General Provisions of the Indemnity Agreement, and (b) to deliver into escrow whatever monies the Defendants have available, particularly Maria DeMatos through her recent real estate transactions, to discharge Defendants' obligations to Safeco under Paragraph 2 of the "Indemnity to Surety" section of the Indemnity Agreement, pending the outcome of this litigation.

### III.  QUESTION PRESENTED

IF A PLAINTIFF DEMONSTRATES A CLEAR RIGHT TO RELIEF, AND THE PROBABILITY OF DISSIPATION OF ASSETS BY THE DEFENDANTS, IS HE ENTITLED TO ISSUANCE OF A PRELIMINARY INJUNCTION DIRECTING THE DEFENDANTS TO DEPOSIT INTO AN ESCROW ACCOUNT FUNDS WHICH THEY PRESENTLY HAVE AVAILABLE, OR ACCESS TO, PENDING A FINAL TRIAL ON THE MERITS?

Suggested Answer:    Yes.

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

## IV. **ARGUMENT**

The standard for issuance of a preliminary injunction is fairly well established.

A party requesting issuance of a preliminary injunction must demonstrate (a) a likelihood of success on the merits, and (b) the probability of irreparable harm if the relief is not granted. Morton v. Buyer, 822 F.2d 364, 367 (3d Cir. 1987); South Camden Citizens in Action v. New Jersey Department of Environmental Protection, 274 F.3d 771, 776 (3d Cir.2001).

In the case at bar, Safeco's likelihood of success on the merits of its claims against DeMatos Enterprises, Joacquim DeMatos, Donna DeMatos and Maria DeMatos cannot be reasonably doubted or challenged. The reason is that those four Defendants' liability arises out of the unambiguous Indemnity Agreement, under which they are liable to Safeco for the damages and losses Safeco has been incurring as a result of DeMatos Enterprises, Inc.'s numerous defaults on construction projects for which Safeco issued Bonds at DeMatos Enterprises' request. Since the language of the Indemnity Agreement is explicit, those four Defendants' liability under that document cannot seriously be questioned.

The only remaining question then is whether there is a probability of irreparable harm to Safeco if the injunctive relief it seeks is not granted.

The question of whether a plaintiff in a case seeking a money judgment is entitled to a preliminary injunction freezing the defendant's assets, or prohibiting the defendant from transferring assets, was addressed in the Third Circuit's lengthy decision filed in the case of Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186 (3d Cir. 1990). While, for the Court's convenience, a copy of the Hoxworth decision is attached as Exhibit "A" to this Memorandum of Law, the following is a summary of the Third Circuit's pertinent findings and rulings in that case.

6

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

--      The plaintiffs in Hoxworth were a class of investors who claimed they had been defrauded by the defendants regarding the purchase of penny stocks. They sought a preliminary injunction ordering one of the defendants to return approximately $11 Million which had been transferred overseas during the course of the litigation, some of which belonged to a company which was not a party to the lawsuit. In addition to obtaining an Order from the District Court requiring the return of those monies, the plaintiffs also sought and obtained, as part of that Order, a prohibition against the defendants transferring any funds outside the ordinary course of their business, and from transferring any funds out of the country, without the District Court's prior approval.

--      On appeal to the Third Circuit, the defendants argued that ". . .a district court lacks the *power* to protect a potential future damages remedy by a preliminary injunction encumbering assets, even assuming that the usual criteria for obtaining a preliminary injunction are met." Id. at 189 (emphasis in original). The Third Circuit expressly rejected this argument that such relief is not and can never be appropriate, although the Court held that the remedy "must be reserved for extraordinary circumstances,. . ." Id.

--      Some of the evidence introduced at the preliminary injunction hearing before the District Court included proof that the defendants had violated securities laws, by excessive markups and markdowns on securities transactions, and withholding that information from it's customers, and intentionally misleading it's customers about the scope of it's research department, all of which led the District Court to conclude there was a reasonable likelihood of the

plaintiffs succeeding on the merits of their claims. There was also evidence presented regarding: Blinder, Robinson's (the investment firm Defendant) "sagging financial fortunes"; a substantial number of overseas' transactions, particularly in the Hong Kong market; Blinder, Robinson's transfers of substantial dollars from New York to Hong Kong, all of which led the Court to conclude that, in light of the company's financial and legal difficulties, the firm "was unlikely to have sufficient assets to satisfy plaintiffs' potential future judgment against it." Id., at 192-93. The District Court also concluded that the evidence of foreign transfers of money demonstrated that Blinder "was attempting to put his assets beyond the reach of the Court, which caused irreparable injury, by making plaintiffs' likely future judgment against him unforceable." Id. at 193.

-- The defendants in Hoxworth relied primarily on the United States Supreme Court's Decision in DeBeers Consolidated Mines v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). In rejecting the defendants' reading of DeBeers, the Third Circuit pointed out that the First Circuit Court of Appeals, in Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 53 (1st Cir. 1986) had held that "a preliminary injunction can be granted when it is necessary to protect the damages remedy. . ."

-- The Third Circuit pointed out that DeBeers involved a request by the United States Government for issuance of a preliminary injunction to preserve the defendants' funds against which the government could later threaten contempt sanctions. DeBeers therefore did not involve the question of whether a preliminary injunction was appropriate because the government could not recover

8

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

money damages (because the government in the underlying suit was seeking to enjoin future antitrust violations, and could only enforce the injunction through later requests for monetary sanctions if the defendant had assets at risk on a request by the government for sanctions); the Court in De Beers did not address the broader question of whether a plaintiff seeking money damages is entitled to a preliminary injunction if he can demonstrate that it is necessary to preserve the status quo pending a final decision on the merits.

-- The Third Circuit concluded that the United States Supreme Court's analysis in Deckert v. Independence Shares Corp., 311 U. S. 282, 61 S. Ct. 229, 85 L. Ed. 189 (1940) was more on point --than was DeBeers-- with the facts in Hoxworth. In Deckert (also a securities-law action), the plaintiffs sought and obtained a preliminary injunction preventing a third party from transferring assets of the defendant, pending adjudication of the plaintiff's claims. The Court's ruling in Deckert was that a preliminary injunction was "a reasonable measure to preserve the status quo," because there had been allegations that the defendant "was insolvent and its assets in danger of dissipation or depletion." Id. at 196. Based on those facts, the plaintiffs' legal remedy against the defendant would be inadequate without recourse to the funds which were in the hands of the third party. Id.

-- The Third Circuit in Hoxworth also relied on the United States Supreme Court's post-DeBeers decision in United States v. First National City Bank, 379 U.S. 378, 85 S.Ct. 528 13 L.Ed.2d 365 (1965). In First National, the Supreme Court approved issuance of a preliminary injunction ordering a bank,

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

where the defendant had accounts, to freeze those accounts pending the outcome of the underlying litigation. Id. The Third Circuit noted that the Supreme Court had concluded that DeBeers was inapplicable because, in DeBeers only injunctive relief was available, not a money damage award. Id. The Third Circuit then noted that, under the "traditional requirements for obtaining equitable relief," a plaintiff seeking a preliminary injunction to enjoin the transfer of the defendant's assets must show that ". . . plaintiffs are likely to become entitled to the encumbered funds upon final judgment and a showing that without the preliminary injunction, plaintiffs will probably be unable to recover those funds." Id. The Court further stated that any action in which "asset secretion has been proven" involves more than a mere allegation or statement of irreparable injury, and therefore a more likely case for issuance of preliminary injunctive relief. Id. at 197.

--      The Third Circuit concluded that, in imposing a preliminary injunction to encumber the defendant's assets for purposes of protecting a possible future money judgment, ". . . the court must make some attempt reasonably to relate the value of the assets encumbered to the likely value of the expected judgment**."** Id. at 198. It was on this singular and narrow issue that the Third Circuit reversed the District Court's holding, because the District Court had "made no findings estimating the likely size of the judgment plaintiffs were likely to obtain." Id. The Court did however note that while some attempt to tailor the scope of the injunction to the plaintiff's likely recovery, "the determination regarding how precise that tailoring must or can be in any particular case lies

10

within the equitable discretion of the district court." Id. at 199. The Third Circuit therefore remanded to the District Court to "reformulate from scratch whatever injunction it deems appropriate in light of this opinion." Id.

Also of some bearing on the issues raised in Safeco's Motion for Issuance of a Preliminary Injunction is District Court Judge Leisure's decision in Firemen's Insurance Company of Newark, New Jersey v. Keating, 753 F. Supp. 1146 (S.D. N.Y. 1990).

In Keating, the defendants had executed an Indemnification Agreement in favor of the plaintiff surety/bonding company, following which plaintiff issued a surety bond on behalf of each defendant. After the defendants defaulted under certain partnership agreements, the surety, (Firemen's Fund), sought a preliminary injunction requiring the defendants to comply with a cash collateral clause in the Indemnification Agreement, in essence seeking an Order compelling each defendant to deposit cash collateral with Firemen's Fund pending the outcome of the litigation. Id. at 1149. Firemen's Fund rested it's Motion for Preliminary Injunction on affidavits which it submitted; it did not request a hearing before the court to offer additional evidence.

The cash collateral clause in the Indemnification Agreement required the principals to that agreement (being the defendants in the litigation) to deliver to Firemen's Fund cash in an amount equal to the obligations covered by the bonds Firemen's Fund had issued. After noting that Firemen's Fund's argument had "surface appeal," the District Court rejected the request for a preliminary injunction based upon the cash collateral clause, primarily because the plaintiff had failed to demonstrate that it was truly at risk of not collecting on any judgment eventually entered, because of the likelihood of dissipation of assets.

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

Significantly though, the District Court did state that a preliminary injunction *is issuable* to enforce a covenant to post or maintain security if there is evidence offered that it was obvious that if the fund of money was dissipated, a final decree ordering specific enforcement of the cash collateral clause "would be an idle ceremony." Id. at 1152-53.  See also Marine Midland Trust Company of New York v. Alleghany Corp, 28 F.Supp. 680, 684 (S.D. N.Y.1939); Citibank, N.A. v. Singer Co., 684 F.Supp. 382 (S.D.N.Y. 1988)(upholding issuance of preliminary injunction where defendant's assets were being depleted or there was evidence defendant intended to frustrate a judgment by transferring assets outside the court's jurisdiction).

Indeed, the court in Keating characterized it as "familiar law" that, when a defendant's assets "may be dissipated before final relief can be granted, or where the [defendant] threatens to removes its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless, injunctive relief is proper." Id. at 1153 (citations omitted).  The problem however was that Firemen's Fund had "made no showing whatsoever that the defendants will be either unable to satisfy fully any money judgment against them, or that the defendants will attempt to render themselves judgment-proof," because all the plaintiff ever argued on this issue was that the defendant's assets were "subject to dissipation due to the risk of the current, unpredictable economic climate, defendants' payments to other creditors, gifts, poor business decisions, etc." Id.

In the case at bar, Safeco has already alleged that Maria DeMatos has engaged in a fraudulent transfer with her daughter and son-in-law, to put her principal residence out of her name and into theirs.  Safeco has further alleged that the same person who made this fraudulent conveyance has come into literally hundreds and thousands of dollars from the sale of another parcel of real estate.  In addition, Safeco believes and avers that DeMatos Enterprises, Inc. is

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

without adequate funds to satisfy any judgment which would be entered against it, particularly by virtue of the fact that it was recently in a bankruptcy, which was dismissed at some point following institution of this civil action.  Furthermore, Safeco has learned that Defendants Joacquim DeMatos and Donna DeMatos have vacated their principal residence, which is under foreclosure on a judgment entered by the first mortgage holder which demonstrates that those two Defendants are already under substantial financial duress.  As a consequence, Safeco believes and avers that the substantial funds presently held by Maria DeMatos are its principal (if not sole) source of recovery for the $650,000.00 +/- claim which Safeco has against these Defendants, and that Safeco will be placed in a position of irreparable damage, injury and harm if a preliminary injunction is not issued ordering Maria DeMatos to escrow all or a substantial portion of the available monies she has in her possession as a result of these real estate transactions.

Lastly, it should at this juncture be noted that, as of the date of the filing of this Motion for Issuance of a Preliminary Injunction, Safeco's counsel has noticed the depositions of all five individual Defendants, to take place on Friday, August 23nd and to require those Defendants to bring with them financial records and documents which should further clarify the extent to which those Defendants have received assets, cash or other property over the past six to twelve months, and the manner in which they have disposed of that property.  As such, Safeco intends to offer, as additional evidence at the preliminary injunction hearing scheduled before this Court, the information it obtains through those depositions, which Plaintiff believes will further support its request for issuance of a preliminary injunction.[1]

---

[1] It is reasonable to infer, from Defendants' complete refusal to cooperate or respond to Safeco's request for financial information, and to establish the escrow account to hold cash collateral, that

## IV. **CONCLUSION**

Plaintiff, Safeco Insurance Company of America, respectfully requests issuance of a preliminary injunction in the form of Order attached as Exhibit "F" to Safeco's Motion for Issuance of a Preliminary Injunction.

                Respectfully submitted,

                LAW OFFICES OF KEVIN T. FOGERTY

                By:_____
                    Kevin T. Fogerty, Esquire
                    Attorneys for Safeco,
                    Safeco Insurance Company of America

Date: August 13, 2002

---

Defendants do indeed have the financial wherewithal to collateralize their indemnification obligations.

    Simply put, if Defendants had nothing to hide, and they did not have available the funds to be placed into an escrow account pending a final determination of the full extent of Safeco's damages and losses, then they would provide the financial details requested by Safeco, rather than continuing to try to hide that information.

rm:ktf/C:\staging\3E359D14-22FA-1815A1\in\3E359D14-22FA-1815A1.doc-08/13/02

# CERTIFICATE OF SERVICE

I, Kevin T. Fogerty, Esquire, counsel for Plaintiff, Safeco Insurance Company of America in this proceeding, hereby state and certify that on Tuesday, August 13, 2002, I served by first-class mail, a true and correct copy of Memorandum of Law Filed in Support of Plaintiff Safeco Insurance Company of America Motion for Issuance of Preliminary Injunction, upon the following:

> Douglas Smillie, Esquire
> Fitzpatrick, Lentz & Bubba, P.C.
> 4001 Schoolhouse Lane
> P.O. Box 219
> Center Valley, PA 18034-0219
> *Attorneys for Defendants*
> *Joacquim DeMatos, Donna DeMatos and Maria DeMatos*

Date:  August 13, 2002                              _____
                                                    Kevin T. Fogerty, Esquire