IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAFECO INSURANCE CO. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-CV-2899 |
| | : | |
| DEMATOS ENTERPRISES, INC., et al. | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                         **April_____, 2003**

Plaintiff Safeco Insurance Co. ("Safeco") brought this diversity action for breach of contract (Count I) alleging that Defendants DeMatos Enterprises, Inc., Joacquim DeMatos, Donna DeMatos, and Maria DeMatos (the "Indemnitor Defendants") failed to meet their obligations under the General Agreement of Indemnity ("Indemnity Agreement") between Safeco and Indemnitor Defendants. In the First Amended Complaint, Safeco also asserted two claims of fraudulent conveyance in violation of the Pennsylvania Uniform Fraudulent Transfers Act, 12 Pa. C.S.A. §§5101 et seq. (Counts II & III).

Now before the Court is Safeco's Motion for Partial Summary Judgment in which it seeks (a) judgment in its favor on the issue of liability under Count I of the First Amended Complaint; (b) damages under that Count in the amount of $899,419.76 plus interest; and (c) entry of an order compelling specific performance of the provisions of the Indemnity Agreement requiring a collateral security deposit.[1] For the reasons set forth below, the Court will grant the Motion as to the issue of liability under Count I and will order Indemnitor Defendants to make a collateral security deposit, but will not enter judgment as to damages.

---

[1] The First Amended Complaint, which was filed prior to Defendants' Answer, added the fraudulent conveyance claims and three additional defendants. These claims are not at issue in Safeco's Motion for Partial Summary Judgment.

I.  **Background**

Viewed in the light most favorable to Indemnitor Defendants, the relevant facts are: Safeco is a Washington corporation in the business of issuing surety bonds for construction projects. (1st Amended Compl. ¶ 1.) Defendant DeMatos Enterprises, Inc. is a Pennsylvania construction company whose principal is Joacquim DeMatos. (1st Amended Compl. ¶ 6.) On December 9, 1998, Indemnitor Defendants and Safeco entered into a General Agreement of Indemnity (the "Indemnity Agreement") under which Indemnitor Defendants agreed to reimburse Safeco, on demand, for all losses, costs, expenses, and fees incurred by Safeco, arising out of, or resulting from, Safeco's issuance of surety bonds securing DeMatos Enterprises, Inc.'s performance at construction projects. (1st Amended Compl. ¶¶ 13, 14; Ex. A thereto.)

During 1998, Safeco issued several surety bonds guaranteeing DeMatos Enterprises Inc.'s performance at various construction projects and payment for labor and materials relating to those projects.[2] (1st Amended Compl. ¶ 14; Answer to 1st Amended Compl. ¶ 14; Resp. to Mot. for Partial Summ. J. at 2.) Because DeMatos Enterprises, Inc. defaulted on its obligations relating to these construction projects and eventually filed for bankruptcy,[3] numerous claims and demands

---

[2] In general, a suretyship is a relationship where the surety undertakes to perform if the principal fails to do so. Safeco issued two different types of surety bonds in this case. "Performance bonds" were issued to assure that if the principal, DeMatos Enterprises, Inc., failed to perform its contractual obligations, Safeco would discharge the obligations by either performing them or by paying the excess costs of performance. Additionally, "payment bonds" were issued to guarantee that DeMatos Enterprises, Inc.'s laborers, subcontractors, and suppliers would be paid.

[3] Under the Indemnity Agreement, DeMato Enterprises, Inc. is "deemed to be in default" if, inter alia, "[it] becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent" or "fails to pay, to extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract." (1st Amended Compl., Ex. A.)  DeMato Enterprises, Inc. ceased operations and filed a petition

were made against Safeco on the bonds it had issued.[4] (1st Amended Compl. ¶ 15; Answer to 1st Amended Compl. ¶ 15; Resp. to Mot. for Partial Summ. J. at 2.)

By letter dated July 8, 2002, Safeco demanded that Indemnitor Defendants immediately place in escrow monies presently held by them in bank accounts and other investments as collateral security for their obligations under the Indemnity Agreement. (1st Amended Compl. ¶ 20; Pl.'s Mem., Ex. A.) Indemnitor Defendants failed to provide any collateral or make any payments to Safeco. (Pl.'s Mem. at 4; Ex. C thereto.)

According to an itemized statement sworn to by Ira E. Sussman, Esquire, an officer of Safeco, as of November 20, 2002, Safeco has: (1) paid $740,069.73 on claims; (2) received additional claims which have yet to be paid totaling $63,308.00; (3) incurred attorneys' fees and costs, investigative costs, and consulting fees in the amount of $147,051.50; and (4) estimated

---

under Chapter 7 of the Bankruptcy Code on or about February 19, 2002, but the bankruptcy proceeding has since been dismissed. (Resp. to Mot. for Partial Summ. J. at 1; 1st Amended Compl. ¶ 27; Answer to 1st Amended Compl. ¶ 27.)

[4] Under the Indemnity Agreement, upon default by DeMatos Enterprises, Inc., Safeco has the right, at its discretion, to: "(1) Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any bond; (2) Take possession of Contractor's [DeMatos Enterprises, Inc.'s] or any of Undersigneds' [Indemnitor Defendants'] equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Contractor's office equipment, books and records, and utilize the same in completion of the work under the Contract without payment or any rental for such use; (3) loan or guarantee a loan to Contractor of such money as Surety [Safeco] shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor material, equipment, supplies and other charges, incurred in connection with any contract; (4) take such other action as Surety shall deem necessary to fulfill its obligation under any Bond." (1st Amended Compl., Ex. A.) Further, Safeco has the right to "monies due or to become due [to] Contractor on any Contract . . ." and "any actions, causes of actions, claims or demands whatsoever which Contractor may have acquired against any party to the Contract . . ." and has "the right of exoneration and the right of subrogation". (1st Amended Compl., Ex. A.)

future legal, consulting, and investigative fees and costs of approximately $37,000.00.  (Mot. for Partial Summ. J., Ex. C: Decl. of Ira E. Sussman, Esq. (hereinafter "Decl. of Sussman").)  Safeco acknowledges, however, that it may collect outstanding accounts receivable of up to $396,299.06 from some of the construction projects for which it issued bonds.[5]  (Mot. for Partial Summ. J. ¶ 8.)  Recovery of some or all of these receivables would reduce the amount for which Indemnitor Defendants would ultimately be liable under the Indemnity Agreement.  (Mot. for Partial Summ. J. ¶ 8.)

## II.    Legal Standard

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (citing Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).  "Summary judgment will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The Court must examine the evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Furthermore, summary

---

[5] Although it is not addressed in any of the parties' pleadings or briefs, it appears that Safeco "[took] possession of the work" at these construction projects and is now entitled to "monies due or to become due" for completion of those projects.  (See note 4, supra.)

judgment is an appropriate method of resolving disputes concerning indemnification agreements. United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 588 (M.D. Pa.1998), aff'd, 185 F.3d 864 (3d Cir.1999) (citing, e.g., Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc., 85 F.3d 201 (5th Cir.1996)).

**III.    Analsyis**

    **A.        Liability under Count I**

In Count I of the First Amended Complaint, Safeco alleges that Indemnitor Defendants have breached their obligations under the Indemnity Agreement which provides in relevant part:

> Undersigned [Indemnitor Defendants] agree to pay to Surety [Safeco] upon demand:
>
> All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees . . . consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned . . .

(1st Amended Compl., Ex. A.)

Indemnitor Defendants admit that they signed the Indemnity Agreement and that DeMatos Enterprises, Inc. defaulted on its obligations with respect to the construction projects at issue. (Resp. to Mot. for Partial Summ. J. at 2; Answer to 1st Amended Complaint ¶¶ 14, 15.)  Further, they do not dispute that numerous claims have been made upon Safeco arising from those defaults and that Safeco has incurred losses, costs, and expenses. (Resp. to Mot. for Partial Summ. J. at 2; Answer to 1st Amended Complaint ¶¶ 14, 15.)  Indemnitor Defendants have not reimbursed Safeco or deposited monies as collateral for such losses, costs, and expenses, despite Safeco's demands.  Finally, in their Response to the instant Motion, Indemnitor Defendants "acknowledge their ultimate liability under the Indemnity Agreement".  (Resp. to Mot. for Partial Summ. J. at 2.)

Accordingly, because there are no disputed issues of material fact regarding whether Indemnitor Defendants have breached the Indemnity Agreement, the Court will grant summary judgment in Safeco's favor on the issue of liability for breach of contract as set forth in Count I of the First Amended Complaint.

B.     **Damages under Count I**

Safeco seeks entry of judgment in the amount of $899,419.76 plus interest as damages under Count I of the First Amended Complaint.[6] Under the Indemnity Agreement, the parties agreed that "an itemized statement of losses and expenses incurred by Surety [Safeco], sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of liability of Undersigned [Indemnitor Defendants] to Surety in any claim or suit by Surety against the Undersigned." [7] (1st Amended Compl., Ex. A.)

Safeco has submitted the declaration of an officer and supporting documentation of its payments under the surety bonds at issue. Once a surety has submitted the required documentation of payments, the burden of proof shifts to the indemnitor to prove that a genuine

---

[6] Pursuant to the Indemnity Agreement, the Indemnitor Defendants agreed to pay "interest on all disbursements made by [Safeco] in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement". (1st Amended Compl., Ex. A). The maximum rate permitted in Pennsylvania is six per cent per annum. 41 P.S. § 201, 202. Thus, Safeco is entitled to interest at the rate of 6% from the time it made payments on claims and for costs and fees. Safeco's officer avers that as of November 20, 2002, interest in the amount of $12,298.53 had accrued on Safeco's payments. (Decl. of Sussman, Ex. A-2.)

[7] Similar prima facie evidence clauses have been enforced routinely by courts and have served as a basis for summary judgment. Feibus, 15 F. Supp. 2d at 582 (citing Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983) (applying Pennsylvania law)); Curtis T. Bedwell & Sons, Inc. v. International Fidelity, Ins., 1989 WL 55388 (E.D. Pa. May 23, 1989) (citing Continental Cas. Co. v. American Sec. Corp., 443 F.2d 649 (D.C.Cir.1970)).

issue of material fact exists as to the extent of liability. Feibus, 15 F. Supp. 2d at 582-83 (citing Gundle Lining, 85 F.3d at 210; Continental Cas. Co., 443 F.2d at 650-51; Bedwell & Sons, Inc., 1989 WL 55388, at *3 (E.D. Pa. May 23, 1989); International Fidelity Ins. Co. v. United Constr., Inc., 1992 WL 46878, at *2 (E.D. Pa. March 4, 1992)). Here, Indemnitor Defendants do not contest the amounts that have been claimed for past payments, costs, and fees or for pending claims that have yet to be paid. They do argue, however, that the final amount of damages is currently undeterminable because Safeco may recover accounts receivable from certain construction projects.

While it is undisputed that Indemnitor Defendants are liable in damages for all losses, costs, and expenses, the total amount of such damages cannot yet be fixed, given the possibility of Safeco recovering accounts receivable which would decrease that amount by as much as $396,299.06. Accordingly, entry of summary judgment as to the amount of damages due under Count I would not be appropriate at this time. The Court will, however, entertain an application for assessment of damages when the amount becomes liquidated. Cf. Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins., 1986 WL 9735, at *3 (E. D. Pa., September 5, 1986) ("Until this litigation is completed, International's costs and expenses are ongoing. Accordingly, at the conclusion of this suit, [plaintiff] shall apply to the Court for an assessment of damages in an appropriate amount against these [indemnitor] defendants.").

### C. Collateral Security Provision

Safeco also seeks entry of an Order compelling Indemnitor Defendants to make a collateral security deposit in compliance with the following provision of the Indemnity Agreement:

>   In addition, the Undersigned [Indemnitor Defendants] agree to pay to Surety [Safeco] . . . [a]n <u>amount sufficient to discharge any claim</u> made against Surety on any Bond.  This sum <u>may be used</u> by Surety to pay such claim or be held by Surety <u>as collateral security against loss on any bond</u> . . .

(1st Amended Compl., Ex. A (emphasis added).)

Under this collateral security provision, once a surety receives a demand on its bond, the indemnitor must provide the surety with funds which the surety may hold in reserve.  See <u>Fidelity and Guaranty Ins. Co. v. Keystone Contractors, Inc.</u>, 2002 WL 1870476, at *4 (E.D. Pa. Aug.14, 2002) (holding that a contract under which an indemnitor expressly agrees to pay to the surety funds which the surety might require before the surety is required to make payment on a claim is legal and may be the basis of recovery) (citing <u>Tennant v. United States Fidelity and Guarantee Co.</u>, 17 F.2d 38, 39 (3d Cir. 1927); <u>Safeco Ins. Co. of America v. Schwab</u>, 739 F.2d 431, 433 (9th Cir.1984)).  In order to protect the surety's bargain under an indemnity agreement, courts have granted specific performance when indemnitors have failed to comply with such a provision.  <u>Id.</u> (citing <u>Tennant</u>, 17 F.2d at 38; <u>United Bonding Ins. Co. v. Stein</u>, 273 F. Supp. 929, 930 (E.D. Pa. 1967); <u>Safeco</u>, 739 F.2d at 433 (explaining that "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced")).  <u>See also</u> <u>Feibus</u>, 15 F. Supp. 2d at 588 (recognizing that collateral security agreements "have routinely been upheld").

In response to numerous claims, Safeco determined that a collateral security deposit was necessary and made repeated demands upon Indemnitor Defendants to place funds in escrow.  Despite the express language of the Indemnity Agreement, Indemnitor Defendants failed to respond to these demands.  The sole argument advanced by Indemnitor Defendants in opposition

to Safeco's request for specific performance of this provision is that Safeco has failed to demonstrate that they are capable of complying with an order requiring a deposit of such a large amount of money. Indemnitor Defendants further contend that such an order could force them into contempt of Court. Safeco responds that Indemnitor Defendants would be entitled to a hearing before being held in civil contempt. See Rowe v. Operation Rescue, 920 F.2d 213, 217 (3d Cir. 1990).

The Court finds that Indemnitor Defendants' ability to pay is not a factor in determining the appropriateness of specific performance of the collateral security provision. Under the Indemnity Agreement, the only conditions precedent to Indemnitor Defendants' obligation to provide collateral security are (1) that a claim has been made against a bond issued by Safeco and (2) that Safeco has made a demand for collateral. See Fidelity and Guaranty Ins. Co., 2002 WL 1870476, at *4 (citing Stein, 273 F. Supp. at 929-30). Because Indemnitor Defendants have failed to dispute Safeco's satisfaction of these conditions, the Court will grant summary judgment in Safeco's favor on its claim for specific performance of the collateral security provision of the Indemnity Agreement. Accordingly, the Court will order Indemnitor Defendants to deposit $803,377.73 ($740,069.73 for claims already paid plus $63,308.00 for claims received but not yet paid) with Safeco as collateral security pursuant to the Indemnity Agreement.[8]

---

[8] Safeco requests that the Court order Indemnitor Defendants to deposit $999,419.76 to cover all losses, fees, expenses, and interest to date ($899,419.76) plus create a $100,000 reserve for pending claims and future fees and costs. However, because the language of the collateral security provision in the Indemnity Agreement refers only to "[a]n amount sufficient to discharge any claim made against Surety on any Bond," the Court finds that this provision pertains only to claims made on the bonds ($740,069.73 for claims already paid plus $63,308.00 for claims received but not yet paid), and not interest ($12,298.53 as of November 20, 2002), fees and costs ($147,051.50), or estimates of future fees and costs ( approximately $37,000.00), although these expenses ultimately may be recovered as damages.

**IV.     Conclusion**

For the reasons stated above, the Court will grant Safeco's Motion for Partial Summary Judgment as to liability under Count I and will order Indemnitor Defendants to make an immediate collateral security deposit with Safeco of $803,377.73.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAFECO INSURANCE CO.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 02-CV-2899 |
| | : | |
| **DEMATOS ENTERPRISES, INC., et al.** | : | |

**ORDER**

**AND NOW**, this         day of April, 2003, upon consideration of the Motion for Partial Summary Judgment by Plaintiff Safeco Insurance Company of America ("Safeco") (docket no. 19), the Response by Defendants DeMatos Enterprises, Inc., Joacquim DeMatos, Donna DeMatos, and Maria DeMatos (hereinafter the "Indemnitor Defendants") (docket no. 35), and Safeco's Reply (docket no. 38), **IT IS ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**, for the reasons stated in the accompanying Memorandum.

It is **FURTHER ORDERED** that:

1. Judgment is **ENTERED** in favor of Safeco and against Indemnitor Defendants on liability under Count I of the First Amended Complaint.

2. Indemnitor Defendants shall, no later than five (5) days after receipt of this Order, deposit with Safeco the sum of $803,377.73 as collateral security pursuant to the Indemnity Agreement.

BY THE COURT:

_____
**BRUCE W. KAUFFMAN, J.**